UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON PAUL LEGARE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>E. BURDEN, et al.,<br><br>　　　　Defendants. | Case No. 1:19-cv-01375-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 15)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

　　　　Jason Legare ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on October 1, 2019. (ECF No. 1).

　　　　On February 21, 2020, the Court screened Plaintiff's complaint and found that it failed to comply with Federal Rules of Civil Procedure 18 and 20.  (ECF No. 11).  The Court gave Plaintiff thirty days to "either: a. File a First Amended Complaint; or b. Notify the Court that he wishes to stand on the complaint, subject to this Court issuing findings and recommendations to a district judge consistent with this order."  (Id. at 10).  The Court also provided Plaintiff with applicable legal standards.  (Id. at 6-9).

　　　　After being granted an extension of time (ECF No. 14), Plaintiff filed his First

1

Amended Complaint (ECF No. 15). Plaintiff's First Amended Complaint is now before this Court for screening.[1] For the reasons that follow, the Court will recommend that this action be dismissed because Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 8), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a

---

[1] Pursuant to Plaintiff's request, which was included in his First Amended Complaint, one of Plaintiff's unrelated claims was severed from this action. (ECF No. 17).

2

plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.    SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges the following in his First Amended Complaint:[2]

Since 2002, Plaintiff has been diagnosed with Hepatitis-C Virus ("HCV"). The California Department of Corrections and Rehabilitation ("CDCR") has documented its progression through lab tests and numerous medical notations. In 2007/2008 and 2010/2011 CDCR failed to cure Plaintiff's HCV by use of antiquated treatments, and afterwards, no further HCV treatment was provided until 2018. Plaintiff was only provided with treatment after he filed a Health Care Appeal, as prison medical knowingly allowed his condition to worsen into stage four liver cirrhosis with permanent liver scarring.

When defendant Kim treated Plaintiff's HCV condition (prior to Plaintiff contracting stage four liver cirrhosis), defendant Kim knew about HCV cures provided by Direct Acting Antiviral ("DAA") drugs. Defendant Kim also knew about the mandate issued by the Center for Disease Control ("CDC") years prior to 2018, that all persons infected with HCV "SHALL" be treated with DAA drugs. Plaintiff begged for DAA drugs in 2017 yet was denied despite his condition worsening, as was documented.

Plaintiff's HCV has been eradicated from his body, yet treatments denied between 2001-2018, specifically by defendant Kim, resulted in Plaintiff's life-threatening liver injuries, by going from stage three to stage four liver cirrhosis with permanent scarring. Defendant Kim knew that this will now develop into liver cancer, which is known to be one of man's most horrible deaths. If treated properly with DAA drugs years prior, as mandated by the CDC, Plaintiff's HCV would have been cured, thus preventing stage four cirrhosis. Accordingly, defendant Kim's treatment denials, combined with others, has robbed Plaintiff of at least ten

---

[2] Plaintiff's First Amended Complaint cites to exhibits and includes an exhibit list, but no exhibits are attached.

years of life.

Five years after Plaintiff's HCV was detected, in 2007 and 2009, Plaintiff was finally treated with an antiquated drug, Ribavirin, which failed to cure the HCV in him.

In 2010 and 2011, Plaintiff was again treated with an antiquated drug, Pegasys, which also failed to cure the HCV in him.

From 2011 to 2018, Plaintiff's HCV condition and its progressive worsening was merely documented and monitored by health care providers who provided no treatment, despite knowing that new treatment drugs were created between 2011-2018 known to cure HCV. Plaintiff's health care providers (defendant Kim) knew that Plaintiff's condition, without treatment, would deteriorate into stage four liver cirrhosis and permanent liver scarring.  When denying Plaintiff's requests for DAA treatment from 2017 to 2018, defendant Kim knew that Plaintiff's HCV, left untreated, in fact could turn into stage four liver cirrhosis, permanent liver scarring, inflammation, and impaired liver function, which will eventually lead to a torturous death that was preventable.

Several years ago, the United States CDC ordered a new American Standard of HCV care, mandating that all HCV infected persons are to be treated with DAA drugs, such as Harvoni and Epclusa, which are known to cure HCV disease in 96-99% of patients.

In early 2017, after Plaintiff learned about the new DAAs, Plaintiff went to his primary care provider and requested DAA treatment.  Plaintiff's request was denied by defendant Kim. Defendant Kim stated that, per CDCR guidelines, Plaintiff was not qualified for treatment. This was contrary to the CDC's order and the "American" standard of HCV treatment for the life-threatening condition Plaintiff suffered.

On April 12, 2018, defendant Kim ordered that a lab specimen be taken from Plaintiff to merely continue monitoring his HCV viral load that was now so high a reference range could not be detected.

On May 16, 2018, Plaintiff's liver fiber scan revealed he now had stage four liver stiffness.  Defendant Kim simply entered a note to continue follow-ups to monitor Plaintiff's HCV and continued liver deterioration that defendant Kim knew was a serious life-threatening

condition.

On July 3, 2018, after being denied requested DAA treatments and discovering that he now had stage four liver cirrhosis, fearing for his life, Plaintiff filed a Health Care Administrative Appeal addressing the miserable treatment failures and defendant Kim's flat out denials to treat his HCV with DAA drugs as mandated by the CDC.

If Plaintiff was treated with DAAs earlier, the treatment would have prevented Plaintiff from going from stage three to stage four irreversible liver injury.  Defendant Kim knew that stage four liver cirrhosis will develop into liver cancer, followed by future injury of suffering one of the most painful, horrendous, lingering deaths known to man, as scientifically and medically proven.

On July 10, 2018, after Plaintiff filed his medical appeal, Plaintiff was miraculously approved for a 12-week DAA treatment program with the drug Epclusa.  Defendant Kim knew that Epclusa was not the most effective DAA drug known to cure HCV.

On August 17, 2018, Plaintiff was seen by D. Ramos, a physician's assistant.  Ramos discussed Plaintiff's 6th-week DAA treatment lab results, revealing that Plaintiff's HCV viral load was currently not detected.

On August 22, 2018, the institutional level response to Plaintiff's medical appeal stated that Plaintiff is now determined to be a candidate to begin HCV treatment.

On September 17, 2018, Plaintiff addressed the institutional level appeal response, advancing the appeal to the headquarters level.  Plaintiff argued that Defendant's actions to treat Plaintiff's HCV were entirely too little too late, as defendant Kim (and others) took action only after defendant Kim and others watched Plaintiff's HCV condition develop into stage four liver cirrhosis, despite knowing for years that DAA drug cures were available and that their later treatment would not remedy the irreversible life-threatening organ damage that Plaintiff suffered.

On October 2, 2018, another lab test returned the result of HCV not detected.

On December 5, 2018, the headquarters level response to Plaintiff's appeal merely stated that the treating prison addressed Plaintiff's issues and that, in turn, endorsed defendant

5

Kim's and others' horrendous treatment failures and treatment denials, which caused Plaintiff's stage four liver cirrhosis and irreversible permanent liver scarring. Defendant Kim and others knew this is a life-threatening injury.

On January 3, 2019, another lab test performed returned the result of HCV reference range not detected.

On January 17, 2019, a lab test performed returned the finding that HCV was detected.

On January 29, 2019, a lab test returned the result of HCV not detected.

On February 5, 2019, Plaintiff met with A. Hales, a nurse practitioner, to discuss medical progress notes that revealed that Plaintiff's HCV DAA twelve-week treatment program failed to cure his HCV.

Between February to September of 2019, defendant Kim and other health care providers failed to conclusively determine the "state" of Plaintiff's HCV due to ineffective lab testing events.

Defendant Kim and his superior, Chief Medical Officer Cryer, were at all times mentioned in the First Amended Complaint intimately aware of Plaintiff's HCV condition. Defendant Kim, Cryer, and others knew about available cures for years, knew about the CDC order to treat all HCV infected people with DAAs, and knew that they should not merely watch Plaintiff's condition progress into stage four liver cirrhosis. Defendant Kim and others denied Plaintiff adequate, basic, lawful treatment that he begged for in writing.

Defendants have clearly displayed a shameful disregard toward Plaintiff's deadly disease, particularly in light of advancements in treatments that were available years prior to Plaintiff's injuries occurring. Defendant Kim and others knew full well that Plaintiff would unnecessarily suffer stage four liver cirrhosis, liver scarring, and liver disfunction, and that Plaintiff will contract liver cancer.

Defendant Kim (with Cryer and S. Gates) denied Plaintiff care when he begged for DAA treatment in 2017, even though they knew of his liver condition. Defendant Kim and others also knowingly used outdated methods of HCV testing for fibrosis and cirrhosis, in addition to using treatment criteria that required Plaintiff to suffer advanced liver injury before

6

being qualified for DAA treatment in direct violation of federal standards of care that were set in place years prior to Plaintiff receiving care. And in Plaintiff's case, even after his "FIBER-SCAN" finally returned the result showing defendant Kim that Plaintiff suffered advanced liver injury, defendant Kim still denied treatment until after Plaintiff filed his health care grievance.

The current state of Plaintiff's HCV as of the date he filed his First Amended Complaint is that it has been eradicated from his body.

Plaintiff brings a claim against defendant Kim for deliberate indifference to serious medical needs in violation of the Eighth Amendment.

### III. ANALYSIS OF PLAINTIFF'S CLAIM

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or

7

omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

**B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff has failed to state a claim against defendant Kim. Plaintiff certainly alleges that he disagrees with the medical treatment, or lack thereof, that he received. However, the facts he alleges appear to demonstrate that defendant Kim disagreed with Plaintiff's preferred treatment plan. There are no allegations suggesting that defendant Kim believed that Plaintiff should be receiving DAA drugs and failed to provide them.

Plaintiff alleges that defendant Kim knew that he would develop liver cirrhosis, liver scarring, and liver cancer, but these are conclusory allegations. There are no facts alleged, such as anything defendant Kim did or said, that would suggest defendant Kim knew that, if he failed to provide DAA drugs to Plaintiff, Plaintiff would develop liver cirrhosis, liver scarring, and liver cancer. Moreover, according to Plaintiff, his condition was monitored and treated. While Plaintiff alleges that there was a better treatment that he should have been given sooner, there is no indication that defendant Kim knew of and disregarded an excessive risk to

Plaintiff's health.  Plaintiff does allege that he was only provided with the DAA treatment after he appealed the treatment provided by defendant Kim, but this does not sufficiently show that defendant Kim knew that Plaintiff needed the treatment and failed to provide it.

Plaintiff also alleges that defendant Kim's treatment did not accord with the treatment "mandated" by the CDC.  However, this is a conclusory allegation that the Court is not required to treat as true.  Plaintiff does not provide a copy of the "mandate" requiring that DAA drugs be provided to all people infected with HCV, cite to the mandate, or include the relevant portions of the "mandate" in his factual allegations.  Moreover, even if the CDC did "mandate" the treatment, it appears that Plaintiff has, alleged, at most, a difference of opinion between medical professionals, which is not an Eighth Amendment violation.  While DAA drugs may have been the treatment "mandated" by the CDC, Plaintiff has alleged that he was told by defendant Kim that, per CDCR guidelines, Plaintiff was not qualified for treatment.[3]  Accordingly, there appears to be, at most, a difference of opinion between medical professionals at the CDC and medical professionals at the CDCR regarding whether Plaintiff's condition should have been treated with DAA drugs.

Plaintiff also alleges that defendant Kim did not use the most effective treatment.  However, this is a conclusory allegation.  There are no allegations suggesting that defendant Kim believed that other DAA drugs were more effective, or that defendant Kim had the ability to provide the allegedly more effective drugs yet purposefully failed to do so.

Finally, Plaintiff complains about ineffective lab testing and outdated methods of HCV testing.  Plaintiff describes numerous tests that produced conflicting results.  As to these allegations, Plaintiff has not sufficiently alleged that defendant Kim was responsible for conducting the tests or for deciding which testing methods would be used.  Moreover, even if defendant Kim did conduct the tests, there are no allegations suggesting that defendant Kim knew he was using ineffective or outdated tests, that using these tests posed an excessive risk to

---

[3] Elsewhere, Plaintiff does allege that defendant Kim did not in fact follow CDCR policy.  (ECF No. 15, pgs. 10 & 11).  However, this is a conclusory allegation.  Plaintiff does not explain CDCR's policy or allege how defendant Kim violated it.

Plaintiff's health, or that he (or anyone else) performed the tests in a deliberately indifferent manner (even if the tests were performed negligently, leading to inaccurate results, negligence alone is not enough to state an Eighth Amendment Claim for deliberate indifference to serious medical needs).

Accordingly, Plaintiff has failed to state an Eighth Amendment claim against defendant Kim for deliberate indifference to his serious medical needs.

## IV. RECOMMENDATIONS AND ORDER

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claims. The Court does not recommend granting further leave to amend. There are no facts alleged in the complaint suggesting that defendant Kim acted with deliberate indifference to Plaintiff's serious medical needs. At most, Plaintiff has alleged a difference of opinion between medical professionals, which is not an Eighth Amendment violation. As the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the relevant legal standards, and as Plaintiff filed his First Amended Complaint with the guidance of those legal standards, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\
\\\

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **August 6, 2020**          /s/ Erica P. Grosjean
                                   UNITED STATES MAGISTRATE JUDGE